**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

```
CHARLES HARGETT, JR.              *
                                  *
            v.                    *        Civil Action WMN-08-CV-3420
                                  *
SNAP-ON INCORPORATED              *

      *     *     *     *     *     *     *     *     *     *     *     *
```

**MEMORANDUM**

Before the Court is Defendant Snap-on Incorporated's Motion for Summary Judgment. Paper No. 19.  The Motion is fully briefed.  Upon review of the pleadings and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and the Motion will be granted as set forth below.

**I.   BACKGROUND**

This is a product liability action arising out of an accident involving Defendant Snap-On Incorporated's Snap-On Tire Changer resulting in injury to the Plaintiff Charles Hargett, Jr.  The Tire Changer was purchased by Bill's Auto Body, Incorporated on April 1, 2004, and Defendant installed the tire changer on their premises.  Plaintiff was a mechanic at Bill's Auto Body since September 2004, but has been using tire changers such as Snap On's since 1991.  Plaintiff used the Tire Changer almost daily.

The Snap-On tire changer at use by Plaintiff at the time of the accident is a commercial tire changer that has been sold by

1

Snap-on since 1990.  The tire changer is used to mount and dismount tires to and from wheels.

To dismount a tire from its rim, "the bead," a seal created between the rubber sidewall of the tire and rim to prevent air from escaping, must be broken.  The accident here occurred during operation of the part of the machine used to break the bead.  Without an accompanying visual, it is difficult to describe the part of the Tire Changer used to break the bead. Suffice it to say, the machine at issue used a "bead breaker arm" with a "bead breaker blade" on one end to apply pressure to the bead to break it.  After the tire is placed on the machine, the user places the bead breaker blade in the correct location by using an attached handle.  Once the bead breaker blade is in place, the user depresses a foot pedal causing a cylinder rod connected to a pneumatic cylinder to pull the bead breaker arm and blade toward the tire breaking the bead.  Two washers and two nuts at the end of the cylinder rod create the connection between the cylinder rod and the bead breaker arm and allow the cylinder rod to pull the bead breaker arm toward the tire.  When the connection is engaged, there is considerable tension on the nuts and washers.  Although the nuts and washers are visible during the preparation phase of dismounting a tire, they are not visible once in operation.

2

On June 14, 2005, Plaintiff was using the Tire Changer to dismount five tires.  After dismounting the first four tires, he placed the fifth tire on the machine and positioned the bead breaker blade adjacent to the rim of the tire using the handle on the bead breaker blade.  As he pressed down on the pedal to activate the pneumatic cylinder, Plaintiff's right hand remained on the handle of the bead breaker blade.  The cylinder rod retracted pulling the bead breaker blade against the tire to break the bead.  Plaintiff then heard a noise like a bomb was going off and felt his right hand being jerked towards a back wall.  His right hand came off the bead breaker blade handle and struck a toolbox.  Plaintiff immediately felt pain in his right wrist.  Plaintiff went home to put ice and an ace bandage on it and then returned to work.

When Plaintiff returned to Bill's Auto Body, another employee showed him a nut that he had found on the floor.  The nut was later confirmed to be one of the nuts from the Tire Changer.  The next day, Plaintiff took pictures of the Tire Changer and observed that there were not nuts or washers on the end of the cylinder rod and it had disconnected from the bead breaker arm.  Experts retained by both parties observed that some of the threads on the found nut had been stripped off.

Plaintiff's Complaint contains four counts of negligence, strict liability, breach of express warranty, and breach of

3

implied warranty.  Within the counts of negligence and strict liability, Plaintiff alleges defective design, defective manufacture, and failure to warn.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the evidence before the court, consisting of the pleadings, depositions, answers to interrogatories, and admissions of record, establishes that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying the portions of the opposing party's case which it believes demonstrate the absence of a genuine issue of material fact.  Id. at 323.  The non-moving party is entitled to have "all reasonable inferences . . . drawn in its respective favor." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1129 (4th Cir. 1987).

If the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to summary judgment as a matter of law, the non-moving party must, in order to withstand the motion for summary judgment, produce sufficient evidence in the form of depositions, affidavits, or other documentation which demonstrates that a triable issue of fact

4

exists for trial.  <u>Celotex</u>, 477 U.S. at 324.  Unsupported

speculation is insufficient to defeat a motion for summary

judgment.  <u>Felty</u>, 818 F.2d at 1128 (citing <u>Ash v. United Parcel</u>

<u>Serv., Inc.</u>, 800 F.2d 409, 411-12 (4th Cir. 1986)).

Furthermore, the mere existence of some factual dispute is

insufficient to defeat a motion for summary judgment; there must

be a genuine issue of material fact.  <u>Anderson v. Liberty Lobby,</u>

<u>Inc.</u>, 477 U.S. 242, 247-48 (1986).  Thus, only disputes over

those facts that might affect the outcome of the case under the

governing law are considered to be "material."  <u>Id.</u>

Finally, in assessing such a motion, the Court must view

the evidence and all justifiable inferences in the light most

favorable to the party opposing the motion.  <u>United States v.</u>

<u>Diebold, Inc.</u>, 369 U.S. 654, 655 (1962) (per curiam).

## III. DISCUSSION

Under Maryland law, product liability claims, under any

theory, "must satisfy three basics from an evidentiary

standpoint: (1) the existence of a defect; (2) the attribution

of the defect to the seller; and (3) a causal relationship

between the defect and the injury."  <u>Jensen v. Am. Motors Corp.</u>,

437 A.2d 242, 247 (Md. Ct. Spec. App. 1981) (negligence, strict

liability, breach of warranty).  <u>See also</u> <u>Crickenberger v.</u>

<u>Hyundai Motor Am.</u>, 944 A.2d 1136 (Md. 2008) (breach of express

warranty).  "A product defect can arise from the design of the

product, a deficiency in its manufacture, or from the absence or
inadequacy of instructions or warnings as to its safe and
appropriate use." Shreve v. Sears Roebuck & Co., 166 F. Supp.
2d 378, 407 (D. Md. 2001) (citing Simpson v. Standard Container
Co., 527 A.2d 1337, 1339-40 (Md. Ct. Spec. App. 1987)).  The
plaintiff carries the "burden to establish that it is more
likely than not that the defect existed at the time of sale.  An
inference of a defect may be drawn from the happening of an
accident, where circumstantial evidence tends to eliminate other
causes, such as product misuse or alteration." Virgil v. "Kash
N' Karry" Service Corp., 484 A.2d 652, 657 (Md. Ct. Spec. App.
1984).

**A.   Negligence, Strict Liability, Breach of Implied Warranty**

1. Product Design or Manufacture Defect

Here, Plaintiff has provided no evidence of a product
design or manufacture defect that existed at the time of sale.
Nor does he provide any evidence that would tend to eliminate
other causes.  Plaintiff argues, however, that he does not need
to provide direct evidence to prove what specific defect caused
the product to malfunction when the evidence disappeared in the
accident.  Plaintiff contends that because he could not test the

missing nut, the one nut that they found provided sufficient evidence to prove the existence of a defect.[1]

"Even absent direct evidence, however, a plaintiff's proof must still 'arise above surmise, conjecture, or speculation' because [his] 'right to recovery may not rest on any presumption from the happening of the accident.'"  Redford v. SC Johnson & Son, Inc., 437 F. Supp. 2d 391, 395 (D. Md. 2006) (citing Harrison v. Bill Cairns Pontiac, Inc., 549 A.2d 385, 390 (Md. Ct. Spec. App. 1988)).  To determine whether Plaintiff may proceed in the absence of direct evidence of a defect, Maryland courts weigh five factors: "(1) expert testimony as to possible causes; (2) the occurrence of the accident a short time after the sale; (3) same accidents in similar products; (4) the elimination of other causes of the accident; and (5) the type of accident that does not happen without a defect."  Harrison, 549 A.2d at 390.

Here Plaintiff provides no evidence supporting any of the factors.  Plaintiff's expert does not know whether the accident was caused by a design, manufacture, or installation defect, or whether it was caused by some later alteration at Bill's Auto

---

[1] The Court notes, however, that while Plaintiff has said that his fellow employee found only one nut after Plaintiff went home to take care of his injured wrist, Plaintiff never says that he or the other employees made an effort to find the other nut or washer or were aware immediately after the accident that they should be looking for an additional nut and washer.

Body.  Cornetto Dep. at 102-03, 106, 146, 151-52.  Nor does Plaintiff provide evidence eliminating the possibility of later alterations to the tire changer.  He provides no evidence regarding whether anyone other than Plaintiff who had access to the machine may have altered it or whether any or what kind of service was ever done on the machine.  These facts (or lack thereof) also mitigate against finding that this type of accident does not happen without a defect – since it could have been caused by a later alteration, as admitted by Plaintiff's expert.  Moreover, the accident occurred a year after the sale of the machine, during which time any number of alterations could have been done to the machine.  Finally, Plaintiff also has not provided evidence regarding whether the same accident has occurred in similar products (or with the same product).

Thus, Plaintiff has not provided sufficient evidence for a trier of fact to find Defendant liable on any count as to the design or manufacture of the machine.

2.   Failure to Warn

The only potential defect for which Plaintiff has provided any evidence is a failure to warn and provide adequate instructions.  Defendant argues that it had no duty to warn because it had no knowledge of the danger posed by the product.  According to Defendant, it had never been notified that a user had altered the product in such a way as may have happened here,

nor had it ever been notified that the nut had loosened and become disengaged on its own after installation.  Defendant also argues that the position of the nuts was obvious to users and that anyone cleaning the cylinder rod in accordance with the maintenance instructions would notice if the nuts had been removed or repositioned.  Defendant contends, therefore, that, because the danger was obvious, users should not need instruction to know to check the nuts periodically.  Plaintiff's expert, however, testified that the product was defective because it did not include proper instructions regarding the installation, maintenance, and operation of the machine.  Cornetto Dep. at 103-05, 152-53, 164-66.  Plaintiff's expert stated that, because the nuts were capable of removal and were not visible during operation of the bead breaker arm, users should have been instructed to check to ensure that the nuts were properly in place prior to operation.  Cornetto Dep. at 147-48.

"An obligation to warn may arise when there is no defect in design or manufacture, but the distributor knows or should have known of product-related risks that would not be obvious to normal, reasonable users."  Mazda Motors of America v. Rogowski, 659 A.2d 391, 394 (Md. Ct. Spec. App. 1995).  The duty to warn arises, however, only when "there is a reasonable probability of injury if no warning is given."  Dudley v. Baltimore Gas &

Electric Co., 632 A.2d 492, (Md. Ct. Spec. App. 1993) (citing
Katz v. Arundel Brooks Concrete Corp., 151 A.2d 731, 733 (Md.
1959)).  Such a duty includes risks involved in the intended
uses of the product as well as other reasonably foreseeable
uses.  Shreve, 166 F. Supp. 2d at 413 (D. Md. 2001) (citing
Owens-Illinois v. Zenobia, 601 A.2d 633, 639 (Md. 1991)).

     Whether the danger is obvious, and, if not, whether the
manufacturer knew or should have known of the danger, are
objective questions.  "The question is not whether the
particular plaintiff actually foresaw the potential danger but
whether a reasonable [user] in the plaintiff's position would
have foreseen it."  Mazda Motors, 659 A.2d at 396 (quoting
Nicholas v. Yamaha, 566 A.2d 135 (Md. Ct. Spec. App. 1989)).
Similarly, where there is no evidence that the manufacturer had
actual knowledge of the danger and where the potential danger is
not obvious, the question is whether a reasonable manufacturer
in the defendant's position should have foreseen it.  See
Zenobia, 601 A.2d at 641 ("for purposes of the 'should have
knowledge' component . . ., a manufacturer of a product is held
to the knowledge of an expert in the field.").

     Here, there is no evidence that there is "a reasonable
probability of injury if no warning is given," nor is there any
evidence that a reasonable manufacturer in Defendant's position
should have foreseen the danger.  Defendant had been selling the

model of tire changer at issue for ten years and similar tire
changers for fifteen years prior to Plaintiff's accident.  In
that time, Defendant sold over 1200 of the same model Tire
Changer.  In addition, other companies that produce similar tire
changers also use two nuts as a connection between the cylinder
rod and the bead breaker arm.  These tire changers are used
daily.  Nonetheless, Plaintiff provides no evidence that an
accident similar to his occurred when using either the
Defendant's or any other company's similarly designed tire
changer.  Nor does Plaintiff provide evidence that other
companies with similarly designed tire changers provide warnings
or instructions as to the nuts on the bead breaker arm.  Thus,
Plaintiff has provided no reason to believe that the accident
that occurred here is foreseeable to the extent that it would
trigger a duty to warn.

        Plaintiff's only evidence to establish that Defendant had a
duty to warn is the testimony of his expert that simply because
the machine could be disassembled it was foreseeable that
someone might remove one of the nuts causing injury.  Yet the
expert's testimony without anything more is not sufficient to
demonstrate foreseeability when there is no evidence that it has
happened during the daily use of thousands of similarly built
tire changers over the past fifteen years.

Finally, a "'manufacturer need not warn of every mishap or source of injury that the mind can imagine flowing from the product.'" <u>Hood v. Ryobi North Am., Inc.</u>, 17 F. Supp. 2d 448, 452-53 (D. Md. 1998) (quoting <u>Liesener v. Weslo, Inc.</u>, 775 F. Supp. 857, 861 (D. Md. 1991). Here, the Defendant warned users to stand clear of the bead breaker arm during operation in a label on the bead breaker arm and in the instruction manual. Plaintiff ignored this warning and provided no explanation as to how a different warning or instruction may have been better heeded.  Given that there is no evidence regarding other accidents of the type that happened here, Defendant cannot be expected to provide a warning for every manner in which the bead breaker arm could possibly cause injury.

Thus, Plaintiff has not provided sufficient evidence to create a genuine dispute of material fact as to the existence of a defect that is attributable to the dealer at the time of sale. Therefore, Plaintiffs' negligence, strict liability, and breach of implied warranty claims fail.

## B.   Breach of Express Warranty

Express warranties in Maryland are statutory and governed by Section 2-313 of the Commercial Law Article of the Maryland Code, which provides

§ 2-313.  Express warranties by affirmation, promise, description, sample

(1)   Express warranties by the seller are created as
      follows:

    (a)   Any affirmation of fact or promise made by
      the seller to the buyer which relates to the
      goods and becomes part of the basis of the
      bargain creates an express warranty that the
      goods shall conform to the affirmation or
      promise.

    (b)   Any description of the goods which is made
      part of the basis of the bargain creates an
      express warranty that the goods shall
      conform to the description.

    (c)   Any sample or model which is made part of
      the basis of the bargain creates an express
      warranty that the whole of the goods shall
      conform to the sample or model.

(2)   It is not necessary to the creation of an express
      warranty that the seller use formal words such as
      "warrant" or "guarantee" or that he have a
      specific intention to make a warranty, but an
      affirmation merely of the value of the goods or a
      statement purporting to be merely the seller's
      opinion or commendation of the goods does not
      create a warranty.

Defendant argues that Plaintiff has presented no evidence

of any statements that could create an express warranty relating

to Bill's Auto Body's purchase of the Tire Changer.  Plaintiff

does not respond to this accusation in its opposition.  In

addition, Plaintiff responded to Defendant's interrogatory

asking for evidence that supported his claim for breach of

express warranty by referring Defendant to his expert's report.

The expert report, however, contains no evidence regarding

statements that could create an express warranty.  Thus,

Plaintiff has presented no evidence to support an express warranty claim.

## IV.  Conclusion

For the foregoing reasons, Defendant's motion for summary judgment will be granted.  A separate order will issue.


_____/s/_____
William M. Nickerson
Senior United States District Judge

December 15, 2009